IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HESMAN TALL

      v.                     :   Civil Action No. DKC 13-2306

MV TRANSPORTATION

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this Fair Labor Standards Act ("FLSA") case is the motion to dismiss filed by Defendant MV Transportation, Inc. ("MV Transportation" or "Defendant"). (ECF No. 8). Also pending is a motion to strike/deny Defendant's motion to dismiss, filed by Plaintiff Hesman Tall. (ECF No. 10). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion to dismiss will be granted in part and denied in part. Plaintiff's motion to strike will be construed as an opposition to Defendant's motion to dismiss.

**I.    Background**

Plaintiff, proceeding *pro se*, brought a complaint against MV Transportation on August 8, 2013, for unpaid wages and

overtime under the FLSA, 29 U.S.C. § 201 *et seq.* (ECF No. 1).[1]
MV Transportation employed Plaintiff as a Paratransit
Driver/Operator from September 2009 until January 6, 2011. (*Id.*
at 2). Operating out of Beltsville, MD, Plaintiff was paid on
an hourly basis and drove various routes in the Washington-Metro
area. Plaintiff alleges that within the last two years, he did
not receive any compensation for "federally-mandated overtime
when such work exceeded 40 hours per week." (*Id.*). Plaintiff
contends that he was forced to attend personal meetings with
supervisors in connection with his duties as an operator and
that he was required to stay off the clock for time spent in
these meetings. (*Id.* at 3). Plaintiff further asserts that
Defendant instituted a very time-consuming and uncompensated
process for submitting route paperwork, where payment for hours
already worked was contingent upon completion of such paperwork.
(*Id.* 3-4). Plaintiff asserts that "Defendant has refused to pay
me for any [r]oute form and mandated claim forms and has failed
to pay me the federally-mandated 1.5 times my regular rate of
pay when such time caused my hourly work total to exceed 40
hours per week." (*Id.* at 4). Plaintiff also contends that
within the last two years, he was not compensated for: pre-trip

---

[1] The docket erroneously reflects that Plaintiff filed a
supplemental complaint on August 12, 2013, but this document is
actually a duplicate of the original complaint. (*See* ECF No.
3).

or post-trip inspection of the vehicle he operated; the time during the break of his split shifts; start travel time when relieving another operator; end travel time when relieving another operator; split-shift travel time; and route waiting time, when he was forced to wait to begin his shift and then occasionally told that there was no work for him. (*Id*. at 4-5).

On October 9, 2013, Plaintiff filed an addendum to his complaint, which includes additional allegations. (ECF No. 6). Specifically, Plaintiff asserts that Defendant forced him to work twelve to fourteen hour days, "which caused driver fatigue and hazards to passenger/patient safety," and that he was not compensated for the overtime hours worked. (*Id*. at 3). Plaintiff also alleges that Defendant frequently failed to provide an eight-hour rest period between shifts and threatened Plaintiff's job security for complaining about lack of sleep. Defendant also allegedly subtracted wages from Plaintiff's pay by deducting the value of passenger fares, tokens, and fare cards and forced Plaintiff to accept bus tokens and fare cards as part of his salary. (*Id*.).

Defendant moved to dismiss on October 10, 2013. (ECF No. 8). On October 17, 2013, instead of filing an opposition, Plaintiff moved to strike/deny Defendant's motion to dismiss, which will be construed as his opposition. (ECF No. 10). In the opposition, Plaintiff makes new factual allegations to

support his FLSA claims and, for the first time, asserts a violation of Section 8(a)(5) of the National Labor Relations Act ("NLRA"). Plaintiff also includes fourteen exhibits to support both his previous and newly-asserted contentions, including incident reports, time logs, and payroll forms. (ECF Nos. 10-1 to 10-14). Defendant replied on October 29, 2013. (ECF No. 13). On November 20, 2013, Plaintiff filed a request that the court accept the allegations in his opposition as a supplement to the complaint. (ECF No. 14).

## II. Analysis

Plaintiff includes new allegations in the opposition and submits supporting exhibits which were not included in either his original complaint or the addendum filed in October 2013. In the reply brief, Defendant urges the court to dismiss the complaint and disregard the new allegations in the opposition. Defendant is correct to point out that Plaintiff cannot amend his complaint through an opposition, but certain allowance should be made considering Plaintiff's *pro se* status. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). The new facts in Plaintiff's opposition will be considered to determine whether Plaintiff should be granted leave to amend his complaint if the complaint is otherwise subject to dismissal.

Defendant argues that Plaintiff's claims should be dismissed because they are either time-barred or fail to support an actionable FLSA claim. (ECF No. 13). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (*quoting* Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

The statute of limitations is an affirmative defense that a party typically must raise in a pleading under Fed.R.Civ.P.8(c) and is not usually an appropriate ground for dismissal. *See Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md. 2002); *Gray v. Metts*, 203 F.Supp.2d 426, 428 (D.Md. 2002). Dismissal,

however, is proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem, North Carolina*, 85 F.3d 178, 181 (4th Cir. 1996); *see* 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 714 (3$^{d}$ ed. 2004) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6).").

### A.   Statute of Limitations

The FLSA provides for a two-tiered statute of limitations, depending on the standard of culpability Plaintiff can prove. 29 U.S.C. § 255(a).  By default, a plaintiff must commence an FLSA action within two years of when the cause of action accrued.  29 U.S.C. § 255(a).  If Plaintiff can prove a "willful violation" of the FLSA, however, the period to commence an FLSA cause of action is extended to three years.  *Id.*  To establish willfulness, the plaintiff must show that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA] statute."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Butler v. DirectSAT USA, LLC*, 800 F.Supp.2d 662, 669 (D.Md. 2011).

Plaintiff was terminated in January 2011 and did not bring his complaint until August 8, 2013. Defendant argues that the two-year statute of limitations applies because Plaintiff failed to plead willfulness. In the opposition, Plaintiff asserts that the FLSA violations occurred within the last three years and he attempts to plead willfulness, stating that he sent written notices of unpaid wages and other FLSA violations to Defendant in an effort to resolve payroll discrepancies, and the notices were subsequently ignored. (ECF No. 10, at 7). Receipt of such notices could demonstrate Defendant's awareness of potential minimum wage and overtime violations, and could also demonstrate Defendant's inaction in the face of violations. *See, e.g., Rankin v. Loews Annapolis Hotel Corp.*, Civil Case No. L-11-2711, 2012 WL 1632792, at *2 (D.Md. May 7, 2012) ("Although [plaintiff] uses conclusory language in contending that [defendant] 'wilfully, knowingly, and purposely' engaged in unfair labor practices, he also references a written agreement between [defendant] and its employees that precluded them from recording their overtime. The facts that he proffers concerning this agreement, although sparse, are sufficient to support an inference of willfulness, thus extending the FLSA's statute of limitations."). Plaintiff also alleges that Defendant failed to compensate him for work performed beyond the forty hour week despite forcing him to work twelve to fourteen hour days. (*Id.*

at 9-10); *see, e.g., Butler*, 800 F.Supp.2d at 669 (finding sufficient to trigger the three-year statute of limitations allegations that defendant required plaintiff to work unpaid time). This allegation further demonstrates Defendant's potential knowledge of an FLSA violation. *See Marshall v. Gerwill*, 495 F.Supp. 744, 755 (D.Md. 1980) (finding that the three-year statute of limitations applied to an employer who was allegedly aware of continuing violations of the minimum wage provisions).

If the three-year statute of limitations applies, however, many of Plaintiff's claims are still precluded. Plaintiff filed his original complaint on August 8, 2013, thus, to the extent he relies on allegations preceding August 8, 2010 to support his FLSA claim, these claims are time-barred. (*See* ECF No. 1). Consequently, to support his FLSA claims, Plaintiff can only rely on allegations from August 8, 2010 to January 6, 2011, the date he was terminated.[2]

_____

[2] Defendant argues that even assuming Plaintiff's opposition is construed as an amended complaint asserting a "willful" violation of the FLSA, "any such claims would necessarily be limited to the brief 2.5 month window of time between October 17, 2010 [] and January 6, 2011 (the date of his termination of employment)." (ECF No. 13, at 9). Defendant suggests that the statute of limitations should be calculated from October 2013, when Plaintiff filed the addendum to the complaint. Defendant is mistaken. The amended complaint relates back to the date of the original pleading. *See* Fed.R.Civ.P. 15(c)(1).

B.   **Overtime and Minimum Wage Claims**

Plaintiff alleges violations of the overtime and minimum wage provisions of the FLSA.  Defendant argues that the surviving claims should be dismissed because they do not allege an FLSA violation.  (ECF No. 13, at 1).  "The purpose of the FLSA is 'to protect all covered workers from substandard wages and oppressive working hours.'"  *Shaliehsabou v. Hebrew Home of Greater Washington, Inc.*, 363 F.3d 299, 304 (4th Cir. 2004).  Section 206 states that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce" wages of at least $6.55 per hour for any work performed prior to July 24, 2009, and $7.25 per hour thereafter.  29 U.S.C § 206(a)(1).[3]  Section 207 requires employers to compensate their employees "at a rate not less than one and one-half times the regular rate" for any hours worked in excess of forty per week.  29 U.S.C. § 207(a)(1).  "To state a *prima facie* case under the FLSA, plaintiff must show 'as a matter of just and reasonable inference that the wages paid to him did not satisfy the requirements of the FLSA.'"  *Avery v. Chariots For Hire*, 748 F.Supp.2d 492, 496 (D.Md. Sept. 16, 2010) (*quoting*

---

[3] The $7.25 per hour rate applies to Plaintiff's surviving claims.

*Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1513 (11th Cir. 1993)).

In support of the overtime claim, Plaintiff asserts that he worked over forty hours a week but was not compensated one and a half times his regular rate of pay. (ECF No. 10, at 9). In the motion to dismiss, Defendant argued that Plaintiff provided "absolutely no facts regarding when this denial of overtime purportedly occurred [] or the approximate[] number of hours of overtime he was allegedly denied." (ECF No. 8-1, at 5-6). Plaintiff submits, as exhibits to his opposition, payroll records that reflect that from August 2010 until January 2011, he worked over forty hours on some weeks. It is not clear, however, whether he was compensated for the additional hours. (*See* ECF No. 10-14, at 35-51).[4] Viewing the allegations in the light most favorable to Plaintiff and crediting his statement that he was not paid for hours worked beyond forty, his overtime claim may be viable.[5] *See, e.g., Hawkins v. Proctor Auto Serv. Ctr., LLC*, No. RWT 09cv1908, 2010 WL 1346416, at *1 (D.Md. Mar. 30, 2010) (finding sufficient to survive dismissal allegations that plaintiff worked more than forty hours a week and that

---

[4] Plaintiff cannot rely on payroll records before August 8, 2010 to support his overtime or minimum wage claims because they precede the applicable three-year statute of limitations.

[5] Exhibits N17-N25, (ECF No. 10-14, at 34-51), are the only exhibits that fall within the three year statute of limitations.

defendants did not compensate him for overtime hours). Plaintiff will have twenty-one (21) days to file an amended complaint to indicate exactly how many overtime hours he worked each week between August 8, 2010 and January 2011, his regular rate of pay at the time, and the amount he was compensated each week when Defendant allegedly owed him overtime.

As for the minimum wage claim, Defendant contends that Plaintiff's claim for unpaid wages fails because he never alleges that Defendant failed to pay him the minimum wage for all the hours he worked. Instead, Plaintiff alleges that he performed work during certain hours of the day for which he was not compensated. He states that he was not paid for "a pre-trip or post-trip inspection of the vehicle [he] was operating. The accumulated amount of time required to inspect the vehicle, for one week, amounted to 2.5 hours." (ECF No. 10, at 7). He further contends that on August 14, 2010, he attended a meeting with his supervisor from 4:44 p.m. to 5:08 p.m. and was required to "stay off the clock before and during the meeting." (*Id*. at 8). Plaintiff alleges that he attended a company meeting on October 29, 2010 from 8 p.m. to 9 p.m. regarding his duties as an operator, but likewise remained uncompensated for this time.

(*Id.* at 9).[6]   Plaintiff also asserts that he needed to complete route forms in order to be compensated, and the process for completing the forms was very time consuming.

"The FLSA does not guarantee that employees are paid for every hour of work and does not allow for employees to recover more than the statutory minimum wage." *Avery*, 748 F.Supp.2d at 501.   In order to state a claim for a minimum wage violation under the FLSA, Plaintiff must allege that he did not receive compensation equal to or exceeding the product of the total number of hours worked and the statutory minimum hourly rate during a given week. *See Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1198 (4th Cir. 1969).   Thus, the relevant analysis is not whether the Plaintiff was specifically compensated for an hour of employee safety meeting time or twenty four minutes of personal meeting time, but rather, whether the average wage per hour of work completed falls below the minimum wage. *Blankenship*, 415 F.2d at 1198.

As Defendant points out, Plaintiff "makes no allegation that on those workweeks [falling within the statute of limitations] [when] he was allegedly required to work 'off-the-clock,' his average hourly wage fell below the applicable minimum wage." (ECF No. 13, at 6).   For instance, Plaintiff

---

[6] Plaintiff's references to meetings on October 17, 2009, October 27, 2009, January 14, 2010, February 25, 2010, April 29, 2010, and May 30, 2010 are time-barred. (ECF No. 10, at 8-9).

submits statements of "payroll discrepancies" from the applicable time period purporting to show that he was paid for fewer hours than he actually worked. (See ECF No. 10-10, at 23-29).  But, because Plaintiff provides no information indicating how much he was paid on a weekly basis and the number of hours worked each week, it is impossible to ascertain whether Plaintiff was or was not paid above the statutory minimum wage. In other words, Plaintiff must demonstrate that for each week between August 8, 2010 and January 2011 when he alleges a minimum wage violation, the total amount paid in a week divided by the total hours worked in a week results in an average hourly rate that falls below the minimum wage.  To the extent Plaintiff argues that between August 8, 2010 and January 2011 he was not paid for time spent inspecting his vehicle, his allegations are insufficient to show that he was not paid the statutory minimum wage for each of the total number of hours he worked.  *See, e.g., Avery*, 748 F.Supp.2d at 502 (dismissing claim for wages for pre-trip cleaning inspections where plaintiffs have not alleged that they were not paid the statutory minimum wage for each of the total number of hours they worked).[7]  If Plaintiff

---

[7] In his addendum to the complaint, Plaintiff asserts that "Defendant also deducted wages from my pay by deducting the value of passenger fares, tokens and farecards[] in actual dollar amounts from my salary." (ECF No. 6, at 3).  A deduction of wages is only impermissible if the deduction reduces total wages per hour below the statutory minimum wage. *See Mullins v.*

were to include (and expand upon) the factual detail asserted in his opposition papers in an amended complaint, he may be able to state a viable minimum wage claim under the FLSA.  Accordingly, Plaintiff will be permitted to file an amended complaint within twenty-one (21) days to include factual support for the claim that his average hourly wage fell below the applicable minimum wage when he was required to work "off-the-clock."  To assert an FLSA minimum wage violation, Plaintiff must identify in the amended complaint the number of hours worked in a work week and the remuneration given by Defendant for that week. Specifically, Plaintiff's amended complaint must indicate the number of hours worked in each work week and exactly how much Defendant paid him in each work week, limited to the time period between August 8, 2010 and his termination in January 2011. Plaintiff will not, however, be permitted to assert new claims or allege facts outside the scope of the overtime or minimum wage claims he attempted to raise initially.  *See White v. Home Depot, U.S.A., Inc.*, Civil Action No. DKC 13-0624, 2013 WL 4501328 (D.Md. Aug. 21, 2013) (allowing *pro se* plaintiff leave to amend to expand upon new factual assertions raised in the opposition).

---

*Howard County*, 730 F.Supp. 667, 673 (D.Md. 1990).  Plaintiff has not alleged that any deductions caused his wages to fall below the statutory minimum, thus this is not a viable claim.

C.    **Health and Safety Violations**

In the opposition, Plaintiff also asserts violations of the FLSA and Section 8(a)(5) of the NLRA because Defendant "wilfully ignored Plaintiff's requests for adequate rest between shifts," required Plaintiff to work on less than four hours of sleep, and, on December 17, 2010, subjected Plaintiff to "unimaginable situations while working" when a passenger he was transporting "defecated on himself and began spreading feces on the window and seat." (ECF No. 10, at 2, 5-7).  Plaintiff also alleges that on October 28, 2010, he responded to Defendant's "notice of delayed trips" by explaining the work-related factors that contributed to his delay in pushing the start button on his GPS monitoring device. (*Id.* at 6).  Inadequate time to prepare for bed, lack of sleep, and travel to work are not actionable under the FLSA or Section 8(a)(5) of the NLRA.[8]  Similarly, neither the FLSA nor the NLRA provides a cause of action for temporary, unsanitary working conditions; neither provides a cause of action for receipt of a "notice of delayed trips," which Plaintiff has failed to claim had any adverse impact on his compensation or hours worked calculation.  *See, e.g., Covington v. Target Corp.*, Civil No. WDQ-12-3540, 2013 WL 5428702, at *5

---

[8] Plaintiff contends that Defendant's conduct violated NLRA Section 8(a)(5), but the section he cites, 29 U.S.C. § 158(a)(5), addresses refusal to bargain collectively with the representatives of employees and is inapplicable to Plaintiff's claims.

(D.Md. Sept. 25, 2013) ("The FLSA does not require an employer to provide employees with rest periods or breaks."). Plaintiff cannot rely on these allegations of health and safety violations to support the FLSA and NLRA claims.

## III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted in part and denied in part. Plaintiff will have twenty-one (21) days to file an amended complaint in accordance with the memorandum opinion. A separate order will follow.

                                                        /s/

DEBORAH K. CHASANOW
United States District Judge