IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HESMAN TALL

      v.

MV TRANSPORTATION

:
:
:    Civil Action No. DKC 13-2306
:
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this Fair Labor Standards Act ("FLSA") case are Defendant's motion for approval of a settlement agreement that resolves the claims of Plaintiff Hesman Tall for unpaid overtime wages, (ECF No. 39), and a separate motion to review specific provisions of the settlement agreement filed by Plaintiff (ECF No. 40). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. Because the proposed settlement agreement represents a fair and reasonable resolution of a *bona fide* FLSA dispute, the settlement agreement will be approved.

**I. Background**

The factual allegations surrounding this case are contained in prior opinions. (*See* ECF Nos. 18 & 26). In short, Plaintiff was employed as a Paratransit Driver/Operator with Defendant MV Transportation from September 6, 2009 until January 6, 2011. He

asserts that Defendant violated the FLSA by failing to pay him overtime.  The crux of Plaintiff's overtime claim is that he was required to perform certain assignments "off-the-clock" which were not considered "work" by MV Transportation and for which he was not compensated.

On December 22, 2014, the parties submitted their proposed settlement agreement for consideration, along with a proposed order.  (ECF No. 37).  They did not, however, file a memorandum outlining the reasons why the court should approve the settlement.  On December 23, 2014, the undersigned issued a memorandum opinion and order directing the parties to supplement the record, providing supporting information as described in the memorandum opinion to enable the court to conduct a proper assessment of the proposed settlement.  (*See* ECF No. 38).

On January 2, 2015, Defendant filed a motion to approve the settlement agreement.  (ECF No. 39).  In that motion, defense counsel indicated that he:

> repeatedly contacted Plaintiff to discuss the Court's December 23, 2014 Order and circulated a draft of the instant motion. Plaintiff, however, refused to discuss the 'joint' motion and appears to lack [] complete understanding of what the Court required of the parties in its December 23, 2014 Order.  Accordingly, Defendant has no choice but to file this motion unilaterally

> and allow Plaintiff the ability to respond
> if necessary.

(*Id.* at 4 n.1). Plaintiff followed with his own motion requesting that the court review specific provisions of the settlement agreement. (ECF No. 40). Defendant filed a response to Plaintiff's motion (ECF No. 41), and Plaintiff submitted a supplement (ECF No. 42).

The Settlement Agreement states that, upon court approval, Defendant will pay Plaintiff $2,200, less all applicable statutory deductions, including federal and state payroll withholding taxes.[1] (ECF No. 41-1, at 4). In exchange, Plaintiff agrees to a general release of all claims against Defendant and upon court approval of the Settlement Agreement, dismissal of this lawsuit with prejudice. (*Id.* at 4-6). The Settlement Agreement also contains a confidentiality provision and a "non-disparagement" clause, pursuant to which Plaintiff agrees not to criticize MV Transportation and its employees and services, publicly or privately. (*Id.* at 7). The Settlement Agreement includes a no-hire provision, pursuant to which

---

[1] The Settlement Agreement provides that each party "will be solely responsible for all expenses incurred by them respectively or on their behalf, including but not limited to their respective attorneys' fees, costs, and disbursements." (ECF No. 41-1 ¶ 3).

Plaintiff agrees never to seek employment with MV Transportation or any of its affiliates, parents, subsidiaries, successors, predecessors, and assigns. (*Id.*). Finally, Paragraph 11 requires Plaintiff to agree – to the extent permitted by law – not voluntarily to cooperate in any litigation against MV Transportation arising out of or relating to his employment relationship with it.

## II. Analysis

Because Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees, the statute's provisions are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Under the first exception, the Secretary of Labor may supervise the payment of back wages to employees, who waive their rights to seek liquidated damages upon accepting the full amount of the wages owed. *See* 29 U.S.C. § 216(c). Under the second exception, a district court can approve a settlement between an employer and an employee who has brought a private action for unpaid wages pursuant to Section 216(b), provided that the

4

settlement reflects a "reasonable compromise of disputed issues" rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

Although the Fourth Circuit has not directly addressed the factors to be considered in deciding motions for approval of such settlements, district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*. *See, e.g.*, *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D.Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F.Supp.2d 471, 478 (D.Md. 2010). Pursuant to *Lynn's Food Stores*, an FLSA settlement generally should be approved if it reflects "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food*, 679 F.2d at 1355. Thus, as a first step, the *bona fides* of the parties' dispute must be examined to determine if there are FLSA issues that are "actually in dispute." *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2 (D.Md. Aug. 31, 2011) (*citing Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1241-42 (M.D.Fla. 2010)). Then, as a second step, the terms of the proposed settlement agreement must be assessed for fairness and reasonableness, which requires weighing a number of factors,

including:  "(1) the extent of discovery that has taken place;
(2) the stage of the proceedings, including the complexity,
expense and likely duration of the litigation; (3) the absence
of fraud or collusion in the settlement; (4) the experience of
counsel who have represented the plaintiffs; (5) the opinions of
[] counsel . . .; and (6) the probability of plaintiffs' success
on the merits and the amount of the settlement in relation to
the potential recovery."  *Lomascolo v. Parsons Brinckerhoff,
Inc.*, No. 08-cv-1310, 2009 WL 3094955, at *10 (E.D.Va. Sept. 28,
2009) (collective action); *see also Poulin v. Gen. Dynamics
Shared Res., Inc.*, No. 09-cv-00058, 2010 WL 1813497, at *1 n.1
(W.D.Va. May 5, 2010) (applying the same factors to a settlement
that involved only individual FLSA claims).

### A. *Bona Fide* Dispute

"In deciding whether a *bona fide* dispute exists as to a
defendant's liability under the FLSA, courts examine the
pleadings in the case, along with the representations and
recitals in the proposed settlement agreement."  *Amaya v. Young
& Chang, Inc.* Civil Case No. PWG-14-749, 2014 WL 3671569, at *2
(D.Md. July 22, 2014).  After Defendant filed several motions to
dismiss, Plaintiff's only remaining claim is for overtime,
limited to the time period between August 8, 2010 and January 6,

2011, the date he was terminated.  *See Tall v. MV Transp.*, Civ. Action No. DKC 13-2306, 2014 WL 5298023 (D.Md. Oct. 14, 2014). Under the FLSA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207.  If an employer violates Section 207, he is liable for unpaid overtime and an equal amount of liquidated damages.  29 U.S.C. § 216.  Although neither party provides much detail regarding the disputed factual allegations, Defendant states that "[l]iability under the FLSA is a contested issue, with MV strongly disputing Plaintiff's arguments that he was denied <u>any</u> overtime compensation during the August 8, 2010 and January 6, 2011 time period at issue."  (ECF No. 39, at 6) (emphasis in original). Thus, Defendant has not admitted liability, and continues to maintain that Plaintiff was properly compensated for all work performed.  Plaintiff believes that he completed tasks for which he was not compensated.  The pleadings, along with the parties' representations in court filings, establish that a *bona fide* dispute exists as to Defendant's liability under the FLSA for overtime payments.

**B. Fairness & Reasonableness**

Upon review of the parties' submissions and after considering the relevant factors enumerated by the *Lomascolo* court, the Settlement Agreement appears to be a fair and reasonable compromise of the parties' *bona fide* dispute.

The parties agreed to settle at a relatively early stage of the proceedings, after several motions to dismiss had been adjudicated and the parties engaged in minimal discovery after the court entered a scheduling order on November 10, 2014. (ECF No. 29). Defendant represents that it provided initial disclosures to Plaintiff on November 26, 2014, "which included a list of each individual likely to have discoverable information that Defendant may use to support its claims or defenses in this case." (ECF No. 33, at 1). Defendant further contends that "[w]hile the [p]arties both possess the relevant time and payroll records at issue in order to fully assess their respective positions on the[] issues [concerning tasks for which Plaintiff believes he was not compensated], if the [p]arties were to continue with this litigation, both would still expend significant time and expense in discovery which would greatly exceed the amount of alleged damages at issue without certainty that either would ultimately prevail." (ECF No. 39, at 7).

8

Thus, the parties have had sufficient opportunity to "obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to the trial of this case." *Lomascolo*, 2009 WL 3094955, at *11.

Additionally, there is no evidence that the proposed Settlement Agreement – which Defendant represents was reached after a month of active negotiations – is the product of fraud or collusion. Defendant points out that although Plaintiff is *pro se*,

> he was sufficiently sophisticated to draft several pleadings, compile his time and payroll records into a spreadsheet detailing on a week-by-week basis precisely the total amount of alleged overtime due, and actively engaged in [] on-going negotiations (including several counter-offers) with counsel for MV over the past months which resulted in the final terms set forth in the proposed settlement agreement.

(ECF No. 39, at 7). The Settlement Agreement appears to be the product of negotiations between Plaintiff and defense counsel. Indeed, Plaintiff indicates that "[D]efendant has been fair and reasonable throughout the negotiations of the terms of settlement." (ECF No. 42, at 2).

9

As to the relationship between the amount of the settlement and Plaintiff's potential recovery, the Settlement Agreement requires Defendant to pay $2,200 – less all applicable statutory deductions – to settle Plaintiff's overtime claims. (*See* ECF No. 41-1, at 4). Defendant represents that it has agreed to resolve this matter "in [an] amount which considerably exceeds the alleged unpaid overtime at issue – approximately $655.79 according to Plaintiff's own calculations." (ECF No. 39, at 7). Plaintiff submitted a spreadsheet as an exhibit to his amended complaint, which alleged overtime hours worked during the applicable period, the rate of pay, and the "[t]otal net pay owed," which amounts to $655.79. (*See* ECF No. 20-1).[2] In his amended complaint, Plaintiff estimated his damages to be approximately $3,880, but this was before the court dismissed his claim alleging minimum wage violations under the FLSA, leaving only his overtime claim. (*See* ECF No. 20, at 1). As stated above, if an employer violates Section 207, he is liable for unpaid overtime and an equal amount of liquidated damages.

---

[2] In a prior memorandum opinion, the court noted that Plaintiff may recover only for overtime worked from August 8, 2010 through January 6, 2011. In his spreadsheet, Plaintiff included two weeks during which he allegedly worked overtime and was not compensated, but the time period is outside the applicable statute of limitations.

29 U.S.C. § 216.  Crediting the figures Plaintiff identified in
his spreadsheet, he would only be entitled to $1,311.58 ($655.79
plus an equal amount of liquidated damages).  The settlement
amount of $2,200 exceeds his likely recovery assuming he
prevailed on his overtime claim.  In light of the risks and
costs associated with proceeding further and Defendant's
assertions that Plaintiff *was* compensated for all the overtime
hours worked, the $2,200 figure appears to "reflect[] a
reasonable compromise over issues actually in dispute."
*Lomascolo*, 2009 WL 3094955, at *8.

The Settlement Agreement also contains a general release of
claims beyond those specified in the amended complaint.  (*See*
ECF No. 41-1, at 5-6).  The Settlement Agreement states, in
relevant part:

> Tall . . . hereby unconditionally and
> irrevocably releases, remises and forever
> discharges MV and all of its respective
> parents, subsidiaries, partners,
> representatives . . . . from any and all
> suits, claims, demands, interest costs
> (including attorney's fees and costs
> actually incurred), expenses, actions and
> causes of actions, rights, liabilities,
> obligations . . . *of any nature whatsoever*
> which Tall, . . . *now has*, owns or holds, or
> at any time heretofore *ever had,* owned or
> held, or could have owned or held, whether
> known or unknown, suspected or unsuspected,

through the Effective Date[3] of this
Agreement.

(*Id.*) (emphases added).  The Settlement Agreement specifies that

the above provision constitutes a general release and that

> [t]hough Tall may file a charge against MV
> with an administrative agency, he is waiving
> and releasing the right to recover any
> monetary or non-monetary relief . . . in
> connection with a charge and/or
> investigation filed or initiated by himself,
> another individual, group of individuals,
> with the Equal Employment Opportunity
> Commission and/or any other federal or state
> agency, for any claim or cause of action of
> any type arising at any time prior to the
> Effective Date of this Agreement.

The Agreement also includes a "Covenant Not to Sue," requiring

Plaintiff to agree never to sue MV or any of the Releasees in

any forum for claims, laws, or theories covered by the general

release provision.  (*Id.* at 6).

Some courts have held that an overly broad release

provision can render an FLSA agreement unreasonable if the

release includes claims unrelated to those asserted in the

---

[3]  Paragraph 19.d defines "Effective Date" as the date that
the parties have executed and delivered the Settlement Agreement
to counsel for MV, "when Tall has provided MV with a completed
IRS W-4 Form, after the expiration of the Revocation Period,
after MV's receipt of the Stipulation of Dismissal executed by
Tall, and after the Court has approved the Agreement and entered
the fully executed Stipulation of Dismissal, whichever is
later." (ECF No. 41-1, at 9).

complaint.  *See, e.g., Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1352, (M.D.Fla. 2010) (concluding that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer" that fails "judicial scrutiny"); *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. 10-5243 SBA, 2012 WL 6629608, at *3 (N.D.Cal. Dec. 19, 2012) (rejecting FLSA settlement agreement where the release "provision does not track the breadth of the allegations in this action and releases unrelated claims").  Although a general release can render an FLSA settlement agreement unreasonable, the court "is not required to evaluate the reasonableness of the settlement as it relates to non-wage-dispute claims if the employee is compensated reasonably for the release executed." *Villarroel v. Sri Siva Vishnu Temple*, No. GJH-I-T-02617, 2014 WL 7460967, at *3 (D.Md. Dec. 31, 2014); *see also Duprey v. Scotts Co. LLC*, PWG-13-3946, ---F.Supp.2d----, 2014 WL 2174751, at *4 (D.Md. May 23, 2014).  As explained above, the proposed Settlement Agreement compensates Plaintiff in an amount that exceeds his likely recovery on the overtime claim assuming he could prevail.  *See, e.g., Coles v. Von Paris Enterprise, Inc.*, 2014 WL 6893861, at *8 n.2 (D.Md. Dec. 3, 2014) ("Although the Settlement Agreement does not explicitly account for the portion

13

of the $4500 that compensates the Plaintiffs for their FLSA
overtime claims and the portion that compensates the Plaintiffs
for their non-FLSA base pay claims, the fact remains that
Plaintiffs' total recovery exceeds the amount that they claimed
in overtime under the FLSA.  Accordingly, the Court finds that
the broad general release provision does not render the
Agreement unreasonable as to Plaintiff's FLSA claims.").  Based
on the foregoing, the $2,200 appears reasonable for the general
release executed.

Plaintiff largely agrees with the terms of the proposed
Settlement Agreement, but seeks the court's review of several
provisions therein.  (*See* ECF Nos. 40 & 42).  Specifically,
Plaintiff believes that the "no hire" provision may violate the
Whistleblower Protection Enhancement Act of 2012.  (ECF No. 40,
at 1).  Plaintiff states:

> For [] purposes of a smooth resolution,
> [P]laintiff is not averse to agreeing to the
> above stipulations, as he has already signed
> and submitted the Release.  Plaintiff is
> only asking for the court's review of
> whether the stipulation is a violation of
> the retaliation clause of the Whistleblower
> Protection Enhancement Act of 2012 and upon
> the court's determination[,] [P]laintiff
> will comply and hopes that [D]efendant will
> also.

(ECF No. 42, at 2).   Plaintiff also points to the clause requiring him to agree not to cooperate in other legal proceedings against MV Transportation, except to the extent prohibited by law.

Mr. Tall was terminated on January 6, 2011.  Paragraph 9 of the Settlement Agreement covers the parties' agreement concerning reemployment:

> Tall hereby covenants and agrees that he will not ever seek or accept employment, either directly or indirectly, with MV or any of its affiliates, parents, subsidiaries, successors, predecessors and assigns.   Tall further agrees that the execution of this Agreement is good and sufficient cause for MV and its affiliates, parents, subsidiaries, successors, predecessors and assigns to reject any application by him for employment.   Tall further agrees, admits, and acknowledges that any future refusal by MV to employ him, retain his services, or any termination of such employment based on this Section is a legitimate, non-discriminatory and non-retaliatory business reason for such refusal or termination, and that such reason shall be conclusive and binding on any court or finder or fact.

(ECF No. 41-1, at 7).   The Whistleblower Protection Enhancement Act of 2012 that Plaintiff cites is wholly inapplicable here, as it protects federal employees and applicants from retaliation for whistleblowing activities.   As Defendant points out,

15

"Plaintiff is neither a federal employee nor has he engaged in any whistleblowing activities [] by virtue of his FLSA lawsuit filed against a _private_ entity for alleged unpaid overtime." (ECF No. 41, at 3) (emphasis in original). The "no re-hire" provision is a _negotiated_ term of the proposed Settlement Agreement in exchange for payment by Defendant of $2,200 to settle the lawsuit. By Plaintiff's own admission, defense counsel was fair during negotiations and there is no indication that Plaintiff was coerced into agreeing to the "no re-hire" provision. Plaintiff also appears to take issue with Paragraph 11, which requires him to agree not _voluntarily_ to cooperate in any litigation against MV Transportation. The provision also states that "Tall [] agrees that he will not assist, join, participate in, or consent to opt _in to any FLSA claim against MV that arose prior to the Effective Date of this Agreement_, and that he will elect to opt out of any FLSA action against MV of which he is involuntarily made a member or participant." (ECF No. 41-1, at 7) (emphasis added). Again, this clause is something the parties _negotiated_ in exchange for payment of the settlement amount by Defendant. As with the general release provision discussed above, the $2,200 is reasonable for the releases executed.

## III. Conclusion

For the foregoing reasons, the motion to approve the Settlement Agreement will be granted.   A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

17